# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>vs.<br>CESAR ALFREDO,<br>    MEZA-GARCIA (1),<br>       aka Hector Lopez-Garcia,<br>       aka Hector Lopez,<br>       aka Hector Perez,<br>       aka Tachuela,<br>       aka Tacho<br><br>                    Defendant. | CASE NO. 12CR2414 WQH<br><br>ORDER |

HAYES Judge:

The matter before the Court is the motion to suppress wiretap evidence, or in the alternative, to request an evidentiary hearing filed by Defendant Meza-Garcia. (ECF NO. 468).

**BACKGROUND FACTS**

Beginning February 4, 2011, the United States obtained a number of court orders authorizing wiretap interceptions in connection with this investigation. On October 25, 2011, the Honorable Thomas J. Whelan authorized the wiretaps of three cell phone numbers belonging to JUNIOR TT #31, MUNECO CHAVA TT #32, and SHARKEY TT #33. Defendant Meza-Garcia was not named as a target subject, but was first

1 intercepted over the wiretap of MUNECO CHAVA TT #32.

2 On December 5, 2011, the Honorable Janis L. Sammartino re-authorized a
3 wiretap of MUNECO CHAVA TT #32 and authorized the wiretaps of four "spin-off"
4 telephone numbers, including TACHUELA TT#34, FLACO TT #35, CRISTO TT #36,
5 and ALEXIS TT #37. Meza-Garcia was named as a target subject and was intercepted
6 over the wiretaps of TACHUELA TT #34, MUNECO CHAVA TT#32, and FLACO
7 TT#35.

8 On January 18, 2012, the Honorable Janis L. Sammartino re-authorized the
9 wiretaps of TACHUELA TT #34 and MUNECO CHAVA TT #32 and authorized the
10 wiretaps of CRISTO TT#38, ALEX TT#39, UM2980 TT#40, and TORO TT#41.
11 Meza-Garcia was named as a target subject and was intercepted over the wiretaps of
12 TACHUELA TT #34, MUNECO CHAVA TT #32, and ALEX TT#39.

13 On February 24, 2012, the Honorable Janis L. Sammartino authorized the wiretap
14 of CRISTO TT#43, MUNECO CHAVA TT #44, TACHUELA TT #45, and TACHO
15 JR. TT #46. Meza-Garcia was named as a target subject and was intercepted over the
16 wiretap of MUNECO CHAVA TT#44.

17 On March 16, 2012, the Honorable Janis L. Sammartino authorized wiretaps of
18 MUNECO CHAVA TT#47, ALEX TT#48, TACHUELA TT#49, and CHOFORO
19 TT#50. Meza-Garcia was named as a target subject and was intercepted over the
20 wiretaps of MUNECO CHAVA TT#47 and ALEXIS TT#48.

21 On March 28, 2012, the Honorable Janis L. Sammartino authorized the wiretap
22 of TACHUELA TT#51, ALEX TT#52, and FLACO TT#53. Meza-Garcia was named
23 as a target subject and was intercepted over the wiretaps of ALEX TT#52 and FLACO
24 TT#53.

25 On April 30, 2012, the Honorable Janis L. Sammartino re-authorized the wiretap
26 of MUNECO CHAVA TT#47 and ALEX TT#52 and authorized wiretaps of the spin-
27 off telephone numbers of CHOCO TT#55 and TACHUELA TT#56. Meza-Garcia was
28 named as a target subject and was intercepted over the wiretaps of MUNECO CHAVA

1  TT#47, ALEX TT#52, and TACHUELA TT#56.

2  Special Agent Jeffrey A. Grimming was the affiant on all of the wiretap
3  applications, except for the March 16, 2012 affidavit and the March 28, 2012 affidavit.
4  Special Agent Jason K. Rissman was the affiant on the wiretap applications filed on
5  March 16, 2012 and March 28, 2012.

6  On October 26, 2012, a federal grand jury returned a Second Superseding
7  Indictment charging Defendant Cesar Alfredo Meza-Garcia and others with conspiracy
8  to distribute methamphetamine in violation of Title 21 U.S.C. §§ 841 and 846. (ECF
9  No. 279). The Indictment included criminal forfeiture allegations. *Id.* On August 21,
10 2013, Defendant Meza-Garcia filed a motion to suppress wiretap evidence, or in the
11 alternative, to request an evidentiary hearing. (ECF No. 468). On September 9, 2013,
12 the United States filed a response to Defendant's motion to suppress wiretap evidence.
13 (ECF No. 472). On September 16, 2013, this Court held a hearing. (ECF No. 475).

14 **CONTENTIONS OF THE PARTIES**

15 Defendant moves the Court to "suppress all evidence intercepted by wiretaps
16 during the investigation of this case" on the grounds that (1) the wiretap of the targeted
17 phones lacked necessity and (2) the agents failed to properly minimize the interceptions.
18 (ECF No. 468 at 1). In the alternative, Defendant requests an evidentiary hearing to
19 determine whether the United States employed sufficient measures of minimization. *Id.*

20 Defendant contends that the overly expansive investigative purpose described in
21 the affidavit filed in connection with December 5, 2011 wiretap application in effect
22 "create[d]" necessity where there was none. (ECF No. 468 at 4). Defendant asserts that
23 the affidavit "fails to adequately illustrate why normal investigative procedures failed
24 or would fail in this particular investigation." *Id.* at 5. Specifically, Defendant contends
25 that the December 5, 2011 affidavit contains "absolutely no explanation why there was
26 not an effort to cultivate additional informants during the course of this lengthy
27 investigation." *Id.* at 6. Defendant asserts that the affidavit dismisses the use of
28 undercover agents ("UCA") with "boilerplate" reasons, "[d]espite the apparent success

1  of utilizing undercover agents." *Id.* at 7. In addition, Defendant contends that the
2  affidavit dismisses use of physical and video surveillance by stating that "agents are
3  generally unable to conduct surveillance in Mexico, but fails to elaborate," despite the
4  fact that "more than 11 surveillance operations [in the investigation] have been helpful."
5  *Id.* Defendant asserts that the affiant's reasons for failing to utilize grand jury subpoenas
6  or witness subpoenas are merely "inherent limitations" of these investigative techniques
7  and that such explanations have "been rejected by the Ninth Circuit." *Id.*

8        In addition to the evidence obtained from the December 5, 2011 wiretap order,
9  Defendant contends that all communications intercepted pursuant to the orders issued
10 after December 5, 2011, and all fruits of those communications, must also be suppressed,
11 because the extension orders were based on evidence derived from the invalid December
12 5, 2011 order. *Id.* at 8. Finally, Defendant asserts that the December 5, 2011 wiretap
13 order is invalid because the affidavit does not show that the United States conducted
14 sufficient minimization procedures. *Id.* at 9. Defendant requests an evidentiary hearing
15 to determine if the government adopted reasonable measures to achieve minimization.
16 *Id.* at 11.

17       Plaintiff United States contends that the December 5, 2011 wiretap order, and all
18 the subsequent wiretap orders at issue, met the necessity requirement because "each
19 affidavit [in support of the wiretap applications] provided in length specific facts that
20 detailed the progression of the investigation as a whole, as well as the successes and
21 limitations of traditional methods used during the investigation." (ECF No. 472 at 6).
22 The United States contends that the goals of the investigation set forth in the December
23 5, 2011 affidavit were not overbroad. The United States asserts that all of the challenged
24 affidavits "discuss the use and attempted use of confidential sources in detail," including
25 the fact that "the confidential sources were unable to significantly advance the goals of
26 the investigation," since they "had no access to the users of the TARGET
27 TELEPHONES and had not provided meaningful information on any of the TARGET
28 SUBJECTS." *Id.* at 12. The United States concedes that Homeland Security

1  Investigations ("HSI") did not "blindly approach associates of the TARGET SUBJECTS
2  in an effort to cultivate informants," but asserts that it was not required to engage in such
3  conduct in order to satisfy the necessity requirement. *Id.* at 12–13.

4  The United States asserts that the December 5, 2011 affidavit did not use
5  "boilerplate assertions" or "inherent limitations" to dismiss the use of certain traditional
6  investigative techniques, but that "each affidavit discussed the use of these investigative
7  techniques in the specific context of this investigation." *Id.* at 13. The United States
8  asserts that the physical surveillance employed in this investigation was "successful
9  because it was done in conjunction with wiretap interceptions" and that "surveillance
10 without the aid of wire interceptions is not likely to allow [the United States] to
11 accomplish the goals of [the] investigation." *Id.* at 15–16. The United States asserts that
12 the December 5, 2011 affidavit sufficiently explained why the use of grand jury
13 testimony would fail to advance the goals of the investigation. *Id.* at 16.

14 The United States contends that Defendant's argument that all the wiretap orders
15 issued after the December 5, 2011 order are invalid, since the orders relied on
16 information obtained pursuant to the invalid December 5, 2011 order is without merit.
17 *Id.* at 18. The United States asserts, "Even if any of the affidavits failed to establish
18 necessity or probable cause, it does not follow that the evidence acquired as a result must
19 be suppressed." *Id.* at 18. The United States contends that under the good faith
20 exception, which has been applied to wiretaps, even if an affidavit failed to establish
21 probable cause or necessity, suppression would only be appropriate in three
22 circumstances, none of which apply to this case. *Id.* at 18–19. The United States asserts
23 that the minimization procedures in each of the challenged affidavits were appropriate.
24 *Id.* at 19.

25 **APPLICABLE LAW**
26 <u>Necessity</u>
27 Wiretap authorizations are governed by the Omnibus Crime Control and Safe
28 Streets Act, 18 U.S.C. §§ 2510-2522. "To obtain a wiretap, the government must

overcome the statutory presumption against this intrusive investigative method by proving necessity." *United States v. Rivera*, 527 F.3d 891, 897 (9th Cir. 2008) (internal quotation marks and citation omitted). The purpose of the necessity requirement is "to ensure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Forrester*, 616 F.3d 929, 943 (9th Cir. 2010).

"Together, 18 U.S.C. § 2518(1)(c) and (3)(c) comprise the necessity requirement for wiretap orders." *United States v. Gonzalez*, 412 F.3d 1102, 1112 (9th Cir. 2005). Section 2518(1)(c) provides that the affiant in support of an application for a wiretap must provide "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Therefore, the government can establish necessity by any of three, alternative methods. The "government may show that traditional investigative procedures (1) have been tried and failed; (2) reasonably appear unlikely to succeed if tried; or (3) are too dangerous to try." *Gonzalez*, 412 F.3d at 1112. The "full and complete statement" requirement of Section 2518(1)(c) is met where the affidavit provides "specific probative facts" which "show with specificity why *in this particular investigation* ordinary means of investigation will fail." *United States v. Commito*, 918 F.2d 95, 97–98 (9th Cir. 1990) (internal quotation marks and citation omitted). "This may be accomplished in various ways, including, but not limited to, descriptions of the particular illicit operation's peculiarities which necessitate a wiretap and of the heretofore unsuccessful investigatory efforts of the police." *United States v. Spagnuolo*, 549 F.2d 705, 710 (9th Cir. 1977). However, "[b]ald conclusory statements without factual support are not enough." *Commito*, 918 F.2d at 97–98 (internal quotation marks and citation omitted). Section 2518(3)(c) expressly requires the issuing court to determine whether "normal investigative procedures have been tried and failed or reasonably appear unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c).

1    "The court authorizing a wiretap has considerable discretion, so the standard of review is deferential." *United States v. McGuire*, 307 F.3d 1192, 1197 (9th Cir. 2002). When reviewing necessity, the Court of Appeals for the Ninth Circuit "employ[s] a common sense approach to evaluate the reasonableness of the government's good faith efforts to use traditional investigative tactics or its decision to forgo such tactics based on the unlikelihood of their success or the probable risk of danger involved with their use." *Rivera*, 527 F.3d at 897 (internal quotation marks and citation omitted). A judge must determine that "normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time." *Spagnuolo*, 549 F.2d at 710. "However, officials need not exhaust every conceivable investigative technique before obtaining a wiretap." *Forrester*, 616 F.3d at 944.

The "government is entitled to more leeway in its investigative methods when it pursues a conspiracy," since "conspiracies pose a greater threat to society than individual action toward the same end." *McGuire*, 307 F.3d at 1197–98. "The necessity of the wiretap is evaluated in light of the government's need not merely to collect some evidence, but to develop an effective case against those involved in the conspiracy." *Rivera*, 527 F.3d at 902 (internal quotation marks and citation omitted). The Court of Appeals has "consistently upheld findings of necessity where traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to apprehension and prosecution of . . . other satellite conspirators." *Id.* (internal quotation marks and citation omitted); *see also United States v. Bennett*, 219 F.3d 1117, 1121 n.3 (9th Cir. 2000) ("We have consistently upheld . . . wiretap applications seeking to discover major buyers, suppliers, and conspiracy members.").

In this case, the affiant, Special Agent Grimming, described the investigation of a drug trafficking organization ("DTO") based in Tijuana, Mexico that was believed to smuggle large amounts of methamphetamine into the United States from Mexico in the December 5, 2011 affidavit. The stated goals of the investigation were "to fully reveal the manner in which the TARGET SUBJECTS and others as yet unknown participate

in the CRIMINAL ACTIVITY, and to fully reveal the identities of their coconspirators, their places of operation, and the full scope and nature of the conspiracy." December 5, 2011 Affidavit, ¶9. These investigative goals are directly related to the crimes under investigation and are not so broad as to manufacture necessity. The investigative goals at issue here are similar to the goals of other valid wiretap investigations into drug conspiracies. *See, e.g.*, *United States v. Staves*, 383 F.3d 977, 982 (9th Cir. 2004) (upholding district court's necessity finding where "investigators were unable to uncover the full scope of the conspiracy with traditional investigative techniques").

The December 5, 2011 affidavit set forth a full explanation of the investigative techniques which have been employed and set forth the reasons the investigative techniques have been unsuccessful in advancing the goals of the investigation. The affiant fully described the investigative techniques which have not yet been utilized and explained why those techniques would not be productive. The affiant explained that neither of the confidential sources used in the investigation were able to "provide[]meaningful information on the TARGET SUBJECTS," since neither of the sources had access to the target subjects. December 5, 2011 Affidavit, ¶51. The affiant described the use of a Drug Enforcement Administration ("DEA") confidential source ("CS") in the investigation in order to gain more information on some of the target subjects, including MUNECO CHAVA, but explained that the DEA CS had disregarded the DEA's instructions on a number of occasions and had not always been candid with the DEA regarding the investigation. *Id.* at ¶53–56. The affiant explained that the DEA and HSI were aware of the DEA CS' lack of candor based on the wiretap on MUNECO CHAVA TT#32, over which the DEA CS had communicated with the target subject. The affiant noted "some conflict between the information DEA CS is providing and what HSI agents understand to be the structure of the DTO based on wiretap interceptions." *Id.* at ¶57. The affiant explained that the DEA CS cannot "be used to significantly advance the goals of [the] investigation because of his/her credibility issues." *Id.*

The affiant described the use of an undercover agent ("UCA") in making

telephone contact with MUNECO CHAVA through the DEA CS in order to ensure MUNECO CHAVA was ready to carry through with a smuggling event. *Id.* at ¶58. The affiant explained that it is no longer feasible for the UCA to continue to communicate with MUNECO CHAVA, since the marijuana was seized and the target subjects were suspicious of the DEA CS, through whom the UCA contacted the target subject. *Id.* The affiant explained that "agents are severely limited in their ability to introduce a UCA because most of [the] TARGET SUBJECTS . . . reside in Mexico." *Id.* The affiant noted that "any UCA attempting to infiltrate this organization . . . would be placed in serious jeopardy because of the nature of drug trafficking." *Id.* at ¶59. The affiant provided a number of reasons why the use of a UCA is not likely to achieve the goals of the investigation, including the fact that narcotics traffickers are inherently suspicious of outsiders. *Id.* at ¶60. The affiant explained that a UCA's activities would be highly scrutinized and that successfully establishing a UCA's credibility with the target subjects would require much time and expense. *Id.* The affiant explained that even if a UCA were able to infiltrate the DTO, the UCA would likely be relegated to a minor role, inhibiting the UCA's ability to provide information that would lead to sufficient evidence to prosecute the higher-ranking conspirators. *Id.*

      The affiant noted that since his last affidavit, agents had conducted more than eleven physical surveillance operations in the investigation, many of which were helpful. *Id.* at ¶61. However, the affiant explained, the physical surveillance was only successful because it was conducted in conjunction with intercepted calls. *Id.* The affiant noted that on two occasions, "agents would have had no cause to conduct surveillance at all absent information learned through the wiretap." *Id.* The affiant discussed video surveillance, but explained that the prime "locations lack appropriate installation points for video surveillance." *Id.* at ¶64. The affiant explained that the use of surveillance was limited since all of the users of the target telephones likely live in Tijuana, Mexico, and "agents are generally unable to conduct surveillance in Mexico." *Id.* at ¶65.

      The affiant noted that agents have interviewed or attempted to interview six

individuals associated with the target subjects, but explained that only one has been able to provide information relating to the target subjects. *Id.* at ¶66. The affiant stated that "[a]gents have considered calling witnesses before the grand jury to take testimony," but explained that "agents cannot serve subpoenas in Mexico," and many of the target subjects live in Mexico. *Id.* at ¶73. The affiant explained that even if the agents "could obtain testimony from certain U.S.-based TARGET SUBJECTS, . . . it likely would not be productive," since "members of drug conspiracies often lie or minimize their involvement to avoid criminal exposure and reprisal from their coconspirators." *Id.* Another reason the affiant provided for failing to use grand jury testimony at this stage in the investigation is the fear that "service of grand jury subpoenas on the TARGET SUBJECTS might compromise th[e] investigation, by causing them to flee, become more cautious in their activities, or notify others of the existence of th[e] investigation." *Id.*

The affiant explained the limited use of search warrants for similar reasons, noting that "the execution of search warrants at the homes of any of the TARGET SUBJECTS would likely compromise and truncate the investigation by alerting the principals to the investigation and allowing other unidentified coconspirators to insulate themselves further from successful detection and to destroy inculpatory evidence." *Id.* at ¶77. The affiant explained that agents have considered border searches, but have not been able to identify anyone who regularly crosses the border. *Id.* at ¶78. The affiant noted the infeasibility of trash searches, since many of the target subjects reside in Mexico. *Id.* at ¶80. The affiant detailed the use of pen registers, trap and trace devices, and toll records, but explained that these tools are "not a reliable method of proving who the parties to a conversation are or the content of the calls." *Id.* at ¶83.

The affiant discussed the previous wiretap orders issued in the investigation, but explained that the orders have not allowed the agents to accomplish all the goals of the investigation, including obtaining information on the structure of the organizations engaged in narcotics importation or distribution, identifying how the narcotics are being

smuggled into the United States, identifying the distribution networks receiving, storing, and redistributing the loads of narcotics, and discovering the methods used to transport or launder the money associated with the proceeds. *Id.* at ¶88. The affiant noted that the requested interceptions were directed towards identifying the members of the recently-identified importation and distribution cell and developing admissible evidence against these individuals. *Id.* at ¶89. The affiant explained that "[g]iven the relatively high position of the individuals within the organization, wiretap interceptions are the best and likely only way to accomplish these goals." *Id.*

The Court concludes that the December 5, 2011 affidavit set forth facts sufficient to show that the interception of wire communications was necessary in order to accomplish the goals of the investigation, including identifying the members of the recently-identified importation and distribution cell and developing admissible evidence against these individuals. The issuing judge reasonably concluded that the affiant made a showing that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Rivera*, 527 F.3d at 897 (internal quotation marks and citation omitted). The December 5, 2011 affidavit provided specific probative facts about the investigation and did not rely upon conclusory statements. "[T]he mere attainment of some degree of success during law enforcement's use of traditional investigative methods does not alone serve to extinguish the need for a wiretap." *Bennett*, 219 F.3d at 1122. Since the Court finds that the December 5, 2011 wiretap order is valid, Defendant's argument that the subsequent wiretap orders are invalid on the basis that they are derived from the December 5, 2011 order is moot.

Minimization

Section 2518(5) requires that the Government conduct wire intercepts so as to "minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). "The Government has the burden to show proper minimization." *Rivera*, 527 F.3d at 904. In *Rivera*, the Court of Appeals explained:

> Minimization requires that the government adopt reasonable measures to reduce to a practical minimum the interception of conversations unrelated to criminal activity under investigation while permitting the government to pursue legitimate investigation. The minimization techniques used do not need to be optimal, only reasonable.

*Id.* (internal quotation marks and citation omitted). "The mere interception of calls unrelated to the drug conspiracy does not indicate a failure to meet the minimization requirement." *United States v. Torres*, 908 F.2d 1417, 1423 (9th Cir. 1990).

In this case, the December 5, 2011 affidavit set forth sufficient procedures for minimization. These procedures included instructing "all law enforcement officers and linguists who are to perform the interception of wire communications . . . concerning the steps they should take to minimize the interception of communication[s] not otherwise subject to interception in accordance with Chapter 119 of Title 18, United States Code." December 5, 2011 Affidavit, ¶97. The affiant provided that "interception will be suspended immediately when it is determined . . . that none of the named interceptees . . . are participants" in the conversation. *Id.* The affiant noted that "[e]ven if one or more of the interceptees . . . is a participant in a conversation, monitoring will be suspended if the conversation is not criminal in nature or otherwise related to the offenses under investigation." *Id.* Defendant provides no calls which Defendant asserts should have been minimized and does not suggest that any minimization procedure was inadequate. The record demonstrates that the minimization procedures were reasonable and in accordance with 18 U.S.C. § 2518(5).

**CONCLUSION**

IT IS HEREBY ORDERED that the motion to suppress wiretap evidence, or in the alternative, to request an evidentiary hearing filed by Defendant Meza-Garcia (ECF No. 468) is denied.

DATED: October 17, 2013

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge